UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA          :

       v.                               :

**CORNELL NEILLY**,                 :

           Defendant.  :
-------------------------------------------------------X

**26 Cr. 15 (JSR)**

### MEMORANDUM OF LAW IN SUPPORT OF MOTION

Cornell Neilly respectfully submits this omnibus motion under Federal Rule of Criminal Procedure 12.

*First*, Mr. Neilly moves to dismiss the indictment because the evidence presented to the grand jury does not constitute the offenses charged.  Mr. Neilly is charged in a six-count indictment, with three counts of bank robbery and three counts of attempted bank robbery, in violation of Title 18 United States Code sections 2113(a).   In all six counts, the indictment states that Mr. Neilly acted "by force and violence, and by intimidation" and did so "by passing a threatening note to a bank employee demanding money."  *See* Doc. No. 2, Indictment, Counts 1-6.  Yet, in all instances, there was no threat in any note, and the evidence was insufficient to establish that the alleged robber perpetrated any force or violence or intimidation.  As such, we ask the Court to inspect the grand jury minutes and dismiss the instant indictment for failure to constitute the charged federal felonies. In the alternative, Mr. Neilly seeks an evidentiary hearing on this matter.

2

*Second*, Mr. Neilly moves to suppress his post-arrest statements from the point he unequivocally selectively invoked his right to remain silent on issues "about the case." The interrogating detective continued to question Mr. Neilly about his case after Mr. Neilly explicitly stated he would not answer questions about his case but would answer other—non-case-related—questions. In the alternative, we move for an evidentiary hearing.

## FACTUAL BACKGROUND

**I.    Mr. Neilly was charged with six counts of bank robbery and attempted bank robbery for allegedly handing over a note at six different Chase banks in Manhattan on six different occasions.**

In all six counts of bank robbery and attempted bank robbery, the federal indictment charges that Mr. Neilly acted "by force and violence, and by intimidation" and did so "by passing a threatening note to a bank employee demanding money." *See* Doc. No. 2.  In the five notes that were preserved and turned over in discovery, each note says, "this is a robbery" and describes the denominations and, in some cases, the amount requested.  Stephens Aff. at Ex. A. Two add "this is real" and one adds "thank you."  *Id.*

In the available surveillance footage and still photographs, it appears the alleged robber says nothing (or close to nothing), often has both hands visible, holds nothing in his hands save for the note and sometimes a cell phone, and makes no exaggerated gestures while at the teller stations.  Stephens Aff. ¶ 9.  In one video, two Brinks officers happened to walk right behind the alleged robber at the very moment he is handed cash.  *Id.*  The two Brinks officers walk past the alleged robber, look at him, and do not act as if anything is out of the ordinary.  *Id.*  In each alleged robbery, the perpetrator stays on the customer side of the teller window and when there are other customers, waits his turn in line before approaching the teller. *Id.*  In none of the alleged robberies does the perpetrator appear to interact with any customers in the bank.  *Id.*  In none of the alleged robberies is a weapon displayed.  *Id.*

**II.**     **Mr. Neilly selectively invoked his right to silence during his post-arrest interrogation.**

On September 15, 2025, Mr. Neilly was arrested and interrogated by New York City Police Department (NYPD) Detective Hector Mateo.  *See* Exhibit B, Post-Arrest Interview Video.  Within one minute of the interrogation, Mr. Neilly said he did not want to make any statement about his alleged crimes that could be used against him.

| | |
|---|---|
| Det. Mateo[1]: | Before uh…I would like to talk with you in regards to, you know, certain incidents umm just want to get to, got a few questions. But before we speak to you, I am going to read you your rights and then we will get to the talking. OK. Is that okay? |
| Mr. Neilly: | Yeah, but um. So basically, I know the rules and shit. So, we gon' cooperating, I mean we gon' talking, I am not gonna need you to read my rights. But whatever I say to you I don't want you [unintelligible]. |
| Det. Mateo: | No, but let me just read you your rights. I have to. By law and policy, I have to do it. And you know we'll talk. If you cooperate yes, I appreciate that. But let me, I have to read you this, it is just because I have to. I have to. I have to do it. It is part of, you know, part of my job, you know. Umm. So, I'm just gonna, just give me verbal command, yes, no, whatever you know. So, I will read you your rights and. You have the right to remain silent and refuse to answer questions. Do you understand? |
| Mr. Neilly: | Yes. |
| Det. Mateo: | Anything you do, say, may be used against you in the court of law. Do you understand? |
| Mr. Neilly: | Yes. |

---

[1] These quotations are based on undersigned counsel's best hearing of the videotaped statement.  A copy of the videotaped statement is appended at Exhibit B, so the Court may review the original itself.

| | |
|---|---|
| Det. Mateo: | You have the right to consult an attorney before speaking to the police, and to have an attorney present during any questioning now and in the future. Do you understand? |
| Mr. Neilly: | Yes. |
| Det. Mateo: | If you cannot afford an attorney, one will be provided to you without cost. Do you understand? |
| Mr. Neilly: | Yes. |
| Det. Mateo: | If you do not have an attorney available then you have the right to remain silent until you have an opportunity to consult one. Do you understand? |
| Mr. Neilly: | Yes. |
| Det. Mateo: | Now that I have read you your rights, are you willing to answer questions? |
| Mr. Neilly: | Yes. I guess. |

Ex. B at 13:41:17-13:42:36.[2]

Detective Mateo then left for a moment.  He returned with photographs in hand.

| | |
|---|---|
| Det. Mateo: | Obviously you probably know the reason why we're here. You know why you are here? |
| Mr. Neilly: | They told me. |
| Det. Mateo: | What was it? |
| Mr. Neilly: | They said uh five uh banks. |
| Det. Mateo: | Okay, no problem. So, I'm going to show you some pictures, right? Obviously, you know, because I like to use transparency, you know, and I don't like to go over people's heads. I am very honest. I'll tell you what's going on, right? Straight up. So. Who is this person? |
| Mr. Neilly: | You said who was that? |
| Det. Mateo: | Yeah, who is this person? I'll be, uh, clear. |

---

[2] For citations to the post-arrest interview video, Mr. Neilly refers to the minutes and second of the timestamp in the bottom left-hand corner of the video that begins "013 DET SQD – Flush 2025-09-15."

| | |
|---|---|
| Mr. Neilly: | Well, look, I don't want to look at pictures though. |
| Det. Mateo: | You don't want to look at pictures? |
| Mr. Neilly: | *I am not going to identify myself in here.* |
| Det. Mateo: | Okay, so you don't want to look at pictures. |
| Mr. Neilly: | Not like that. *I will talk about anything else but not gonna talk about that.* |
| Det. Mateo: | Perfect, okay, no problem. |
| Mr. Neilly: | No disrespect to you, sir. |
| Det. Mateo: | No, no it's fine, listen, it is okay. Listen. This is a job. You know what I am saying. And I will show respect to people. I will give you respect. I will give you the same respect brother. This is not personal, this is business. OK. So. OK, no problem. I just want to know what led to you to start this-this-this this trend of, you know, these these bank robberies? You got desperate, you don't have a job? Like what happened? What led you to do this? |
| Mr. Neilly: | Uhhh. A variety of things. Is this being recorded? |
| Det. Mateo: | Yes. We have, you know, we have plenty of evidence, you know, that's why I am asking you. |
| Mr. Neilly: | No, that's what I am saying. Not like that. But *I don't want to like talk about this and me being recorded and then we go to Court later and then it comes up.* |
| Det. Mateo: | No, no, I have all the evidence that I need, I have. You know what I am saying? So that is why I'm asking you questions just for me, because remember, I worked this case, so I need to know what led you to what you did, you know what I'm saying. Because when I go and explain myself in court I need to find out, you know, I have to explain to people why I went and chased you, and I did my work, you know what I am saying? So, I have to explain to people. So, just like I am asking you now. The same way people have questions, I have questions. So, I just want to know the why. |
| Mr. Neilly: | *I mean I can tell you about myself, but not about the case. Or anything like that.* |

*Id.* at 13:43:24-13:45:41.

Mr. Neilly proceeded to explain his background.  He explained what was happening in the weeks preceding the alleged bank robberies.  *See id.* at 13:45:42-13:46:50.

After some brief conversation about Mr. Neilly's history, Detective Mateo veered back to questioning Mr. Neilly about the case:

| | |
|---|---|
| Det. Mateo: | So, I guess, you found yourself, what, short of money that led you to do this, or? |
| Mr. Neilly: | Money, desperation, drugs, shit like that. |
| Det. Mateo: | But when you walked into these banks, did you ever, did you ever think that, you know, damn, you know, I am walking in, because obviously you walked in without a mask or anything, you just walk in and give a note, right? It was very simple the note was almost the same amount all the time, which I found a little – like – you know some people will go give me ten, give me fifteen, but yours was like, you know, 3500, 4500, so I was wondering, just for me personally, I was wondering like what could have been crossing your mind when you walked into these banks? And I am glad that we are getting a chance to, and I thank you for giving me a chance to know because for me, this is almost like uh it's like if you sit down with somebody and you say listen I spoke to someone, this could be years later, and you know, you could be a nice guy man but desperation takes you to do crazy shit. So, I always wonder what drives a person to do things like this or any other crime? What drives them to do that? I'm always curious about that. That's all I want to hear from you. |
| Mr. Neilly: | For me, like fear, and then the drugs. It is just like kind of like overpowers it, kind of like takes you out of that that paranoia stage. You know? |

*Id.* at 13:46:51-13:48:14.

Detective Mateo and Mr. Neilly then had a brief conversation about Mr. Neilly's drug addiction before Detective Mateo shifted the questions back to the case, asking, "[s]o were you planning to hit a bank today or?"  *Id.* at 13:48:26.  Mr.

7

Neilly responded he was planning to meet his probation officer and visit a friend who was giving him a gift for his birthday. *See id.* at 13:48:26-13:48:40. Yet again, Detective Mateo steered the conversation to the case: "but you didn't have in mind any plan to hit a bank anytime soon?" *Id.* at 13:48:41-44. Mr. Neilly did not respond to the question. Instead, he informed the detective that it was his birthday. *See id.*

After wishing Mr. Neilly a happy birthday, Detective Mateo asked, "you were obviously short of money?" *Id.* at 13:48:53. Mr. Neilly responded: "It is not really about money. I don't know what it's about, honestly, I am not even gonna lie to you." *Id.* at 13:48:55-13:49:02.

From there, Detective Mateo continued to question Mr. Neilly about the case:

Det Mateo: But what kind of caught my attention, you know you're never violent. All you do is just pass a note. At any of any of these incidents you went into these banks. At any point did it ever cross you to like get violent, or to say, you know, to carry a gun, to make it more like you know you know the right? That's what kind of like got to me, it was always like boom, and you walk right out and you wouldn't say anything and it was so quick. And I was waiting for that one time, like, you would get crazy and you know like have like a gun, but you never did bro. It's just, it never happened.

Mr. Neilly: No, No. I'm not trying to hurt [unintelligible].

Det. Mateo: Exactly. Exactly. Exactly. You're not trying to hurt anybody. So, I figured you know what this guy is not bringing any guns, this guy is not threatening anybody. This guy is doing this for desperation. There's something this guy, there's something he's got that is making him get this desperate and that's why I wanted to get at least get the chance to speak with you about this. At least, you know, because I know, you know people get desperate. You know, even if you have a job. Sometimes these

8

> mother fucking bills get crazy. And you get desperate. And you know, you try to do the right thing but sometimes life takes you a certain way and you know, you don't think. You do shit out of desperation. So, so, when you hit these banks, you would go back on the one train obviously?

Mr. Neilly:          I would walk.

*Id.* at 13:49:51-13:51:21.

The interrogation lasted approximately thirty minutes. At one point, in response to Detective Mateo's question about why he allegedly went back to one bank twice, Mr. Neilly stated: "This is being recorded, but I don't like to say things like that." *Id.* at 13:51:58-13:52:01. Detective Mateo never honored Mr. Neilly's silence invocation—he continued to question Mr. Neilly about the case throughout the interview.

## ARGUMENT

I.    **Mr. Neilly moves to dismiss the indictment because the evidence presented to the grand jury was insufficient to constitute offenses under § 2113(a).[3]**

A.    Standard.

Rule 12(b) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12 further requires that motions regarding an error in the grand jury proceedings and defects in the indictment must be made before trial. Fed. R. Crim. P. 12(b)(3)(A)(v), 12(b)(3)(B)(v).

---

[3] Mr. Neilly previously moved to dismiss his 2021 indictment for bank robbery and attempted bank robbery for the same reasons. *See* Doc. No. 26, 21 Cr. 94 (JSR). Judge Caproni denied the motion. *See id.* at 40.

"The court may authorize disclosure . . . of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). A defendant seeking disclosure of grand jury minutes must demonstrate a "particularized need" for the disclosure which outweighs the Government's interest in maintaining the secrecy of the grand jury proceeding. *United States v. Guillen*, 17 Cr. 512 (KMW), 2018 WL 5831318, at \*7 (S.D.N.Y. Nov. 7, 2018) (citing *Dennis v. United States*, 384 U.S. 855, 871-72 (1966)). The burden is on the defendant to show that "the material [he] seek[s] is needed to avoid a possible injustice . . ., that the need for disclosure is greater than the need for continued secrecy, and that [his] request is structured to cover only material so needed." *Id.* (internal citations omitted).

When a court determines that disclosure is warranted, it "may authorize this disclosure at a time, in a manner, and subject to any other conditions that it directs." *United States v. Teman*, 465 F. Supp. 3d 277, 296 (S.D.N.Y. 2020) (Engelmeyer, J.) (internal quotations omitted) (ordering *in camera* review of grand jury proceedings in deciding the defendant's motion to dismiss the indictment). Here, we request that the Court review the minutes *in camera* for the defect identified in this motion.

Questions of law can be decided at this stage. *See United States v. Heicklin*, 858 F. Supp. 2d. 256, 262-63 & n.5 (S.D.N.Y. 2012). "[I]t would be a waste of judicial resources to conduct a trial, only to rule on a post-trial motion that the

government's theory of criminal liability fails, no matter what facts it was able to establish at trial." *Id.* at 262 n. 5 (relying on *United States v. Bongiorno*, 05 Cr. 390, 2006 WL 1140864 at *4 (S.D.N.Y. May 1, 2006)); *see also United States v. Covington,* 395 U.S. 57, 60-61 (1969) (defendant entitled to dismissal where determinative questions of law were decided in his favor).

"The sufficiency of an indictment and the interpretation of a federal statute are both matters of law." *Heicklin*, 858 F. Supp. 2d at 262 (quoting *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012)). Consequently, "a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *Id.* "A 'claim that an indictment does not charge an offense may be raised at any time, and may be considered by a court *sua sponte*.'" *Id.* (quoting *United States v. Crowley,* 236 F.3d 104, 108, n. 6 (2d Cir. 2000)) (emphasis in original).

B.    <u>The indictment must be dismissed because the evidence presented to the grand jury does not constitute the offenses charged.</u>

Title 18 of the United States Code at section 2113(a) criminalizes, in relevant part:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association.

"As used in section 2113(a), intimidation means to make fearful or to put into fear. Proof of actual fear is not required in order to establish intimidation. Rather, it may be inferred from conduct, words, or circumstances reasonably calculated to

11

produce fear." *United States v. Jacquillon*, 469 F.2d 380, 385 (5th Cir. 1972) (internal citations omitted). Intimidation requires that "the defendant must have done or said something that would make an ordinary, reasonable person fear bodily harm." *See* Sand, *Modern Federal Jury Instructions*, Instruction No. 53-5; *see also United States v. Fleury*, 38 F. App'x. 50, 51-52 (2d Cir. 2002) (recognizing the district court's proper use of that instruction).

In practice, courts only find intimidation in bank robbery cases when defendants do *more* than simply pass a note informing the teller of a robbery or demanding money—including, for example, threatening statements, aggressive actions, or the suggestion or explicit mention of the presence of a weapon. For example, the Second Circuit has found "actions are sufficient to constitute intimidation within the statute" when the defendant "used no force or violence," [but] he said to the bank teller, "I don't want to see you or anyone else get hurt" and "passed a note to the teller demanding money in certain denominations and asked, 'Do you understand what I mean?'" *United States v. Lawrence*, 618 F.2d 986 (2d Cir. 1980).

In *Lawrence*, the robber made explicit oral threats, including regarding injury to the teller. *Id.* The Second Circuit similarly found the "evidence was sufficient to support a reasonable finding of intimidation" when "[t]he evidence at trial showed that the defendant entered the bank wearing a black ski mask and ran at and vaulted over the barrier separating the teller area" [and] while trying to leave the bank premises, the defendant pulled a gun on a bank employee who was blocking

the revolving door to prevent the defendant from escaping." *See Fleury, supra; see also United States v. Johnston*, 543 F.2d 55, 56 (8th Cir. 1976) ("Keeping his right hand in his right coat pocket in such a way as to make it appear that he had a gun … the victims had reason to believe the object in Johnston's pocket was a gun and were, therefore, intimidated."); *United States v. Johnston*, 814 F. App'x. 142, 147 (7th Cir. 2020) ("masked [defendant] entered and told the teller, 'Hands up. This is a robbery.' Even though [the defendant] was unarmed, these words and actions would be sufficient to intimidate a reasonable person to turn over the bank's money."); *Jacquillon, supra* ("the robber presented the teller with a note, which stated 'I have a gun. Give me all big bills or I will shoot you.' This tactic is frequently employed by armed robbers and is clearly intended to induce fear."); *United States v. Cascio*, 17 Cr. 81, 2018 WL 2928033 (W.D.N.Y. Jun. 18, 2018) ("Here, the robber handed the teller a note with the word 'robbery,' ordered her to 'hurry up,' told her not to give him 'any funny money,' and put his hand in his inside vest pocket in a way that suggested he had a gun. That actually frightened the bank teller, as it would any ordinary, reasonable person in her position."); *United States v. Brown*, 459 F. Supp. 3d 1171, 1175 (E.D. Wis. 2020) ("a defendant's actions can rise to the level of intimidation even if he was unarmed or did not explicitly threaten a bank employee" and finding "entering the bank with his face masked, jumping over the counter, forcing the tellers to retreat lest they collide, and knocking over a computer monitor, created an intimidating situation.") (citing *United States v. Hill*, 187 F.3d 698, 701 (7th Cir. 1999)).

In the five alleged robberies and attempted robberies in which the government preserved the notes,[4] Mr. Neilly is accused of using a note that said, "this is a robbery." *See* Stephens Aff. ¶ 8. The notes then added language about the denominations, and in some cases, the amount requested. *Id.* Two added "this is real" and one added "thank you." *Id.*

In all of the alleged robberies and attempted robberies, the contents of the notes are the only possible bases for the "intimidation" element of the alleged robberies. There are no other actions by the perpetrator to support the instant offenses: the alleged robber did not say anything, he did not make any threatening motions, and he did not suggest that he had a weapon. *Id.* at ¶ 9. Indeed, in the alleged robberies caught on video surveillance, the perpetrator's hands are mostly visible and empty (save for the note itself and/or a cell phone) and at no time are holding, nor miming the presence of, a weapon. *Id.* Presuming that the government used the same evidence in the grand jury that was produced to Mr. Neilly in discovery—or a subset thereof—there would have been *no* factual basis for the grand jury to conclude that the banks were robbed (or attempted to be robbed) with the use of violence, force, or intimidation. (This is especially true for Count 3, given that no note was recovered; the evidence of that "robbery" is simply a man walking into a bank, passing a piece of paper to the teller, who then gave it back to him, and then walking out.)

---

[4] The Government has not produced a note for the September 9 robbery (Count 3).

Furthermore, the Rule 12 motion stage is the appropriate time to raise this issue.  Mr. Neilly is not asking the Court to rule on any disputed facts at this juncture.  To the contrary, Mr. Neilly is asking the Court to "accept[] all pertinent allegations as true," *Heicklin*, 858 F. Supp. 2d at 263, then, based on that assumption, decide a question of law: Is a violation of a federal statute (here, 18 U.S.C. § 2113(a)) sufficiently alleged?  *See* Fed. R. Crim. P. 12(b)(3)(A)(v), 12(b)(3)(B)(v), 6(e)(3)(E)(ii) (specifically authorizing pre-trial motions regarding the grand jury and authorizing the release of grand jury information under certain circumstances).  Mr. Neilly has identified a "particularized need" for the Court to review the grand jury minutes *in camera*: that the actions taken by the robber could not have made out the specific element of a taking by force, violence, or intimidation.  *See* 18 U.S.C. § 2113(a); *Guillen*, 2018 WL at *7.

The facts of each incident do not establish that the perpetrator used violence or force or intimidation whatsoever.  *See* 18 U.S.C. § 2113(a).  Thus, the Court should review the grand jury minutes and determine if the evidence presented to the grand jury constituted the charged federal offenses.  If no such offense was sufficiently presented, the indictment must be dismissed.

## II.    Mr. Neilly moves to suppress his post-arrest statement because he unambiguously selectively invoked to remain silent about his case.

In *Miranda v. Arizona*, the Supreme Court attempted to strike the appropriate balance between law enforcement interests in obtaining a confession and a suspect's Fifth Amendment right not to incriminate himself.  384 U.S. 436, 439-42 (1996).  The opinion decreed that this balance is preserved by "giving the

defendant the power to exert some control over the course of the interrogation."
*Escobedo v. Illinois*, 378 U.S. 478, 490 (1964).  Thus, the decision mandated that the suspect be informed prior to any custodial interrogation that he has the right to remain silent and the right to an attorney and that no interrogation can occur until the suspect waives these rights.  Moreover, the suspect can assert these rights at any point during the interrogation and, if he does, questioning must immediately cease.  *See Miranda*, 384 U.S. at 473-74.

An accused, the Court has explained, may "invoke[ ] his 'right to cut off questioning'" with *any* "simple, unambiguous statement.[ ]"  *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (citing *Michigan v. Mosley*, 423 U.S. 96, 103 (1975)); *see also Stewart v. King*, No. 25 Cv. 4246 (JMF), 2026 WL 219082, at *16 (S.D.N.Y. January 28, 2026) (holding that "I'm done" was an unambiguous invocation of the defendant's right to remain silent).

And a suspect may exercise his rights under *Miranda* by controlling the subjects discussed during a custodial interrogation.  *See Mosley*, 423 U.S. at 103-04 (holding that suspect who indicated unwillingness to answer questions about one particular crime may be interrogated about a different unrelated crime).  Thus, in refusing to discuss certain subjects at certain times, a suspect "selectively" invokes his right to silence.  A defendant may "selectively waive his Fifth Amendment right by indicating that he will respond to some questions but not to others."  *United States v. Ramirez*, 79 F.3d 298, 305 (2d Cir. 1996) (citing *United States v. Lorenzo*, 570 F.2d 294, 297–98 (9th Cir. 1978)).  A selective waiver may occur in one of two

16

ways: a suspect "may either tell the police that he will not discuss certain subjects,... or the suspect may... inform the police that he is willing to discuss only specific subjects. Both approaches effectively affect *Miranda's* requirement that a suspect in custody have the right to remain silent or, at his discretion, to limit questioning." *United States v. Soliz,* 129 F.3d 499, 504 (9th Cir. 1997) (citations omitted).

Mr. Neilly selectively invoked his right to remain silent regarding the case. He told Detective Mateo, a minimum of four times, that he did not want to talk about his case.  Mr. Neilly explained his desire to not speak about his case four different times, in four different ways:

  (1) "I am not going to identify myself in here." Ex. B. at 13:44:06.

  (2) "I will talk about anything else but not gonna talk about that." *Id.* at 13:44:10.

  (3) "I don't want to like talk about this and me being recorded and then we go to Court later and then it comes up." *Id.* at 13:45:03-08.

  (4) "I can tell you about myself, but not about the case. Or anything like that." *Id.* at 13:45:37-41.

The fourth invocation was crystal clear.  Mr. Neilly did not want to talk "about the case [] or anything like that."  He made this unambiguous assertion four minutes into the interrogation.  Each of the invocations—particularly by the fourth one—individually and certainly collectively, constituted an unequivocal selective invocation of his right to remain silent as to any line of questioning about his case.

17

Yet, Detective Mateo continued questioning Mr. Neilly about the case anyway. Throughout the interrogation, Detective Mateo asked Mr. Neilly questions related to the case a minimum of thirty times. *See generally* Ex. B.

Thus, Detective Mateo violated Mr. Neilly's right to remain silent and this Court should suppress Mr. Neilly's statements. Given that these errors are egregiously peppered throughout the entire post-arrest statement, the appropriate remedy is to exclude Mr. Neilly's post-arrest statement in its entirety.

## CONCLUSION

For all of these reasons, the grand jury minutes should be reviewed, the indictment must be dismissed, and the post-arrest statement must be suppressed. In the alternative, an evidentiary hearing must be held.

Dated:        New York, New York
              March 2, 2026

                                    Respectfully submitted,

                                    TAMARA GIWA, ESQ.
                                    Federal Defenders of New York
                              By:   __/s/_____
                                    Nora Stephens, Esq.
                                    Sylvie Levine, Esq.
                                    Attorney for Defendant
                                    Cornell Neilly
                                    52 Duane Street – 10th floor
                                    New York, New York 10007

18